IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

WILLIAM MOORE and JOANN MOORE,

Plaintiffs,

v.

KRAUSE MFG. CO., INC., et al.,

Defendants.

Civil No. 15-8085 (RMB/JS)

**OPINION**

APPEARANCES:

McVAN & WEIDENBURNER
By: Brian P. McVan, Esq.
162 S. Easton Road
Glenside, Pennsylvania 19038
    Counsel for Plaintiffs

McCARTER & ENGLISH, LLP
By: Kenneth R. Meyer, Esq.; Ryan A. Richman, Esq.;
Steve H. Del Mauro, Esq.
Four Gateway Center
100 Mulberry Street, P.O. Box 652
Newark, New Jersey 07101-0652
    Counsel for Defendant Terex Corporation

**BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff William Moore ("Plaintiff") brought this action against Defendant Terex Corporation ("Defendant" or "Terex") under New Jersey's Products Liability Act (the "PLA"). N.J. Stat. Ann. § 2A:58C-1 et seq. Plaintiff alleges that he sustained injuries when he fell from a hydraulic lift manufactured by Defendant, which Plaintiff contends lacked proper warnings and was defectively designed. Plaintiff's wife, Joann Moore (together with her husband, "Plaintiffs"), also asserts a claim for loss of consortium. Defendant now moves to exclude the testimony of Plaintiff's expert, Dennis Eckstine [Dkt. No. 39], and for Summary Judgment [Dkt. No. 40].[1] For the reasons set forth below, the Court will grant both Defendant's motion to exclude Plaintiff's expert's testimony and the motion for summary judgment.

I. **FACTUAL AND PROCEDURAL BACKRGROUND**

   *A. The Krause Hydraulic Elevator Model R-68*

The instant action stems from a serious workplace accident wherein Plaintiff William Moore sustained serious injuries to both legs while using a product known as the Krause Hydraulic

---

[1] The Court offered to hold a Daubert hearing, but the parties stipulated that no such hearing was necessary and requested that the Court decide the Daubert motion on the papers at the same time as the motion for summary judgment. See Letter from Brian P. McVan [Dkt. No. 67].

2

Elevator Model R-68 (the "R-68"). The R-68 is a hydraulic lift mechanism that can be attached to a forklift by sliding the forks through the base of the R-68. See Defendant's Motion for Summary Judgment (the "MSJ")[Dkt. No. 40-2], p.1. After attaching the R-68 to a forklift, the forklift operator can elevate the R-68 by raising the forks and the R-68 operator can further elevate the bucket through controls in the R-68 bucket itself. Id.

During discovery, the parties produced evidence that Krause Manufacturing Company ("Krause") began manufacturing the R-68 model in the mid-1960s in Milwaukee, Wisconsin. See Defendant's Rule 56.1 Statement of Undisputed Material Facts in Support of the Motion for Summary Judgment (the "SUMF") [Dkt. No. 40-1], at ¶ 51; see also Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment ("Pls.' MSJ Opp.")[Dkt. 46], p. 1.[2]

---

[2] The Court notes that Plaintiffs failed to comply with Local Rule 56.1(a), which requires the party opposing a motion for summary judgment to submit a response to Defendant's Statement of Undisputed Material Facts "addressing each paragraph of the movant's statement, indicating agreement or disagreement." Generally, under Local Rule 56.1(a), "any material fact not disputed shall be deemed undisputed for the purposes of summary judgment." Plaintiffs imply that their Brief in Opposition to the Motion for Summary Judgment contains disputed facts, noting that "Plaintiffs do not dispute the facts set forth by the Defendants in their Motion for Summary Judgment except as set forth below." Pls.' MSJ Opp., p. 1. Absent a proper response to Defendant's SUMF, such assertions of disputed fact in an opposition brief would not comply with Local Rule 56.1. In any event, the Court finds that the purportedly disputed facts in

3

Defendant provided testimony suggesting that no R-68 models have been manufactured in at least 50 years, as the R-68 stopped being produced prior to 1978. SUMF, at ¶¶ 51-55. Although the entity formerly known as "Krause" no longer exists, it appears that Krause, through a series of sales and mergers, was ultimately subsumed by Terex Aerials, Inc., a wholly owned (albeit inactive) subsidiary of Terex Corporation, the Defendant in this matter.[3]

### B. *Plaintiff's Accident and Complaint*

Since 2000, Plaintiff William Moore has been employed by Micro-Tek, Inc., in Cinnaminson, New Jersey, as an extruder operator and mill operator, also performing other minor maintenance as necessary. SUMF, at ¶ 2. Micro-Tek owned an R-68, which the company's employees, including Plaintiff, used in conjunction with a Hyster forklift to perform various jobs, such as changing light bulbs and fixtures in the factory, running cables for video cameras outside the factory, accessing the facility's roof for repairs, and trimming trees. Id., at ¶¶ 3-

---

Plaintiffs' brief are immaterial. As such, the Court construes the material facts in Defendant's SUMF as undisputed.

[3] Defendant extensively briefs the argument that summary judgment is warranted because Terex Corporation was improperly named as a Defendant and has no connection to Krause or the R-68. See MSJ, p.16-21. However, the Court need not reach this issue or Defendant's statute of limitations argument, as the Court's decision on the PLA claims is dispositive.

4, 22. Prior to his accident, Plaintiff had safely operated the R-68 and the forklift on numerous occasions. Id., at ¶¶ 14-15.

On January 17, 2014, after completing repairs to the roof of Micro-Tek's building, Plaintiff attempted to descend from the roof in the bucket of the R-68, with the assistance of Micro-Tek's in-house mechanic, Paul Havir, who was operating the forklift on the ground. Id., at ¶¶ 29-31.  Unfortunately, when Mr. Havir backed up the forklift, the R-68 caught on the edge of the building, causing the mechanism to become dislodged and slide off the forks of the forklift. Id., at ¶ 32.  The R-68 detached from the forklift and fell towards the ground, seriously injuring the Plaintiff. As a result of the fall, Plaintiff sustained multiple ankle and leg fractures to both of his legs that required surgery. Id., at ¶¶ 32-37.

Plaintiffs commenced this action on November 17, 2015 and filed the operative Second Amended Complaint on February 24, 2016 (the "Complaint")[Dkt. No. 19].  Plaintiff William Moore contends that as the sole owner of the ultimate successor entity to Krause, Terex Corporation is responsible for his injuries under the PLA, for allegedly failing to warn and defectively designing the R-68.  Specifically, Plaintiff argues that the R-68 should have (1) contained explicit warnings about the risk that the R-68 could become dislodged from the forklift, and (2) been designed with a mechanism to safely secure the base of the

R-68 to the forklift. Plaintiff Joann Moore also asserts a claim loss of consortium as a result of the injuries to her husband.

### C. *The History of Micro-Tek's R-68*

At his deposition, Plaintiff William Moore testified that he did not know when or from where Micro-Tek acquired its R-68, but that Micro-Tek already owned it when he began working for the company in 2000. SUMF, at ¶ 5. Mr. Havir testified that he was "70 percent certain" that Micro-Tek acquired the R-68, along with the Hyster forklift, from McKean Machinery Sales in 1996. Id., at ¶ 6. The testimony regarding the condition of the R-68 when Micro-Tek's acquired the unit suggests that it had been subjected to extensive wear and tear. According to Mr. Havir, the R-68 was non-operational when Micro-Tek acquired it, as there was no battery and no electrical switch to adjust the height of the platform. Id., at ¶ 8. Although a brochure for the R-68 from the early 1970s notes that the unit should include a "[l]ocking chain for engagement with fork lift" and swivel caster wheels for easy floor handling, the R-68 acquired by Micro-Tek around 1996 contained neither.

Micro-Tek did not start using the R-68 until 2008, approximately twelve years after acquiring it, when Micro-Tek's owner asked Mr. Havir to repair the R-68 by replacing the battery, running wires up the mast, and installing a new

electrical switch. Id., at ¶¶ 6-9. The R-68 was also painted yellow at some point after Micro-Tek purchased it. Id., at ¶ 10.

### D. Plaintiff's Expert Dennis Eckstine

In support of his claims, Plaintiff presents testimony from Dennis Eckstine, a purported expert on industrial work and machine design. After inspecting the R-68 and reviewing materials relevant to Plaintiff's accident, Mr. Eckstine prepared a report, dated July 29, 2017 ("Eckstine's Report")[Dkt. No. 39-8], which concludes that the "product is defective and unreasonably dangerous because the mechanism by which the man-lift attaches to the forklift was defective." Eckstine's Report, p.12.

Mr. Eckstine acknowledges that there may have previously been a chain that secured the R-68 to the forklift, but opines that "the mechanism of attachment should have been permanently affixed to the man-lift such that it could not become lost or misplaced over time." See id. As alternative, viable approaches that could have cured this defect, Mr. Eckstine proposes either (1) permanently welding the retaining chain to the man-lift so that it cannot be lost over time, or (2) incorporating a "heel pin" into the lower corners of the R-68 to facilitate safe attachment to the forklift. At his deposition, Mr. Eckstine clarified that the heel pin could be attached to the R-68 using a lanyard or chain. See id. Mr. Eckstine did

7

not offer any opinions on warnings, or a lack thereof, in either his deposition or his expert report.[4]

II. **SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. Melrose, Inc. v. City of Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.

---

[4] Plaintiffs attempted to produce a supplemental report from Mr. Eckstine, dated February 20, 2018, containing his opinions on the failure to warn issue, after the close of discovery. However, Magistrate Judge Schneider granted Defendant's motion to preclude the February 20, 2018 report [Dkt. No. 57] and Plaintiffs did not appeal that ruling to this Court. Therefore, any of Mr. Eckstine's opinions on the failure to warn issue have already been deemed inadmissible.

8

2001). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Walsh v. Krantz, 386 F. App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary

9

judgment."). Moreover, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

**III. ANALYSIS**

*A. Plaintiff's Expert*

Defendant argues that the Court must exclude testimony from Plaintiff's purported expert, Dennis Eckstine, on the basis that his opinion, that the R-68 was defectively designed, is speculative and subject to exclusion under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence. This Court agrees.

Rule 702 states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts in the case.

Rule 702 "requires that only reliable testimony, offered with a sufficient factual basis be admitted." JVI, Inc., v. Truckform, Inc., No. 11-6218, 2012 U.S. Dist. LEXIS 181769, at *10 (D.N.J. Dec. 26, 2012). As applied in the Third Circuit, in

10

order for an expert's opinion to be reliable, the expert must have "good grounds" for his belief. The opinion must be based on the "methods and procedures of science" and not merely on "subjective belief or unsupported speculation." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir.1994) (quoting Daubert, 509 U.S. at 589); see also Oddi v. Ford Motor Co., 234 F.3d 136, 144–46 (3d Cir.2000).

Defendant argues that Mr. Eckstine's opinion, that the R-68 was defectively designed, must be excluded because it is based on speculation, rather than facts or any "scientific, technical, or other specialized knowledge." See Defendant's Motion to Exclude Dennis Eckstine (the "Exclusion Motion")[Dkt. No. 39-1], p. 18-19. Mr. Eckstine admits that the R-68 may have previously included a mechanism for securely attaching the R-68 to the forklift, but states that he does not know for sure how that previous mechanism was affixed to the R-68 or whether it was intended to be permanent. See Eckstine's Report, p. 12; SUMF, at ¶¶ 83-89. Mr. Eckstine suggests welding a chain to the R-68, as a permanent solution that would resolve the R-68's defect, but cannot say for sure that the R-68 was not originally manufactured with a chain mechanism welded to the base. SUMF, at ¶¶ 83-89. In fact, at his deposition, Mr. Eckstine admitted that a broken weld mark on the base of Micro-Tek's R-68 could

11

have been the location of a chain or loop that was once welded to the R-68.  Id.

Plaintiff largely concedes that Mr. Eckstine does not possess any unique background knowledge about the R-68 and that his opinions are not based on any specialized methodology. Rather, Plaintiff asserts that Mr. Eckstine's opinion is based on the "common sense" proposition that the original chain must not have been "permanently" attached, if it is no longer affixed to the R-68. Plaintiffs' Brief in Opposition to the Motion to Exclude Dennis Eckstine ("Pls.' Exclusion Opp.")[Dkt. No. 47-2], p. 12.   However, as Defendant points out, it is also common sense that a 50 year-old piece of construction equipment, with signs of substantial wear and tear, may have sustained damage that dislodged a component, intended as "permanent," at some point after it was manufactured, but before it was acquired by Micro-Tek.  See Exclusion Motion, p. 19-21.  Mr. Eckstine fails to support his conclusions with reasonable, fact-based, methodical analysis, which renders his opinions unreliably speculative.  Mr. Eckstine also fails to specify how a heel pin affixed to the R-68 with a lanyard or a chain could properly be considered "permanent." SUMF, at ¶¶ 90-95.  This internal inconsistency, too, is fatal to the reliability of Mr. Eckstine's opinions.

Because Mr. Eckstine's speculative opinions are not based on any "good grounds," they do not meet the reliability threshold for admission. In this instance, the Court must exercise its "gatekeeping role" and exclude the testimony of Plaintiff's expert. Daubert, 509 U.S. at 597, 113 S.Ct. 2786.

### B. *Plaintiff's PLA Claims*

In order to prevail on the design defect claim, Plaintiff must prove that "(1) the product was defective; (2) the defect existed when product left the hands of the defendant; and (3) the defect caused [an] injury to a reasonably foreseeable user." Jurado v. W. Gear Works, 131 N.J. 375, 385 (1993). "Whether a product is defective depends on whether it 'is not reasonably fit, suitable and safe for its intended or reasonably foreseeable purposes.'" McGarvey v. G.I. Joe Septic Serv., Inc., 293 N.J.Super. 129, 142 (N.J.App.Div.1996) (quoting Jurado, 131 N.J. at 385). With respect to the failure to warn claim, Plaintiff "must establish all the same elements required for an action based on a defective product." Mathews v. Univ. Loft Co., 387 N.J.Super. 349, 362 (N.J.App.Div.2006) (quoting London v. Lederle Labs., 290 N.J.Super. 318, 326, (N.J.App.Div.1996), aff'd as modified by Batson v. Lederle Labs., 152 N.J. 14 (1997)).

Defendant contends that summary judgment is warranted on both Plaintiff's design defect and failure to warn claims due to

13

a lack of adequate evidence to establish that the product was defective at the time it was manufactured by Krause. See MSJ, p. 23-26. Both state and federal courts in New Jersey have acknowledged that proving that a defect existed when the product left the hands of the manufacturer is "particularly difficult" when a product is old, as the R-68 here is, and there is no direct evidence that any defective condition existed when the manufacturer sold the product. See, e.g., Strumolo v. Steelcase, Inc., No. 13-1932, 2016 WL 8677209, at *6 (D.N.J. Aug. 26, 2016), reconsideration denied sub nom. Strumolo, 2017 WL 1217129 (D.N.J. Mar. 30, 2017); H.T. Rose Enters., Inc. v. Henny Penny Corp., 722 A.2d 587, 595 (N.J. Super. Ct. App. Div. 1999); see also Scanlon v. Gen. Motors Corp., Chevrolet Motor Div., 65 N.J. 582, 593 (1974)("Generally speaking, the older a product is, the more difficult it is to prove that a defect existed while in the control of the manufacturer").

Given the difficulty of evaluating an older product like the R-68, the proper test is whether the circumstantial evidence supports a reasonable inference that it is more likely than not that the defect existed prior to sale. H.T. Rose, 722 A.2d at 595. Stated differently, what is required is "proof sufficient to support a conclusion that 'in the normal course of human experience an injury would not have occurred at this point in

the product's life span had there not been a defect attributable to the manufacturer.'" Id.

The New Jersey Supreme Court has found that a product's age, prior usage, expected life span, durability, and operation without maintenance are "important considerations in determining whether an inference is permissible." Scanlon, 65 N.J. at 593; see also Navarro v. George Koch & Sons, Inc., 512 A.2d 507, 517 (N.J. Super. Ct. App. Div. 1986) (dismissing manufacturing and design defect claims against oven latch manufacturer where evidence demonstrated that latches had been used daily for six years and had been maintained minimally, if at all, finding that it could not reasonably be inferred that the alleged defect existed while the product was in the control of the manufacturer).

In this matter, the testimony regarding the physical condition of Micro-Tek's R-68 unit indicates that the product underwent substantial modifications during the half-century between its production and Plaintiff's accident. During discovery, the parties uncovered a Krause brochure for the R-68 from some point during the early 1970s. SUMF, at ¶¶ 64-66, 68. The R-68 brochure notes that the mechanism should include a "[l]ocking chain for engagement with fork lift" and swivel caster wheels for easy floor handling. Id. However, the R-68 acquired by Micro-Tek around 1996 contained neither the locking

chain for engagement with the forklift nor the swivel caster wheels. Id. at ¶¶ 67, 69. In addition to lacking a working battery or control switch, Micro-Tek's R-68 had also been modified with two toggle-bolts ("T-bolts") on the base. Id. Furthermore, the R-68 had been so extensively and indiscriminately painted-over in yellow that the parties could not even initially determine the make and model of the mechanism; the parties had to scratch away the paint to reveal the original orange paint color and the nameplate identifying the mechanism as an R-68 manufactured by Krause. See Pls.' Exclusion Opp., p.2.

Given the absence of admissible expert testimony from Plaintiff, the evidence of the significant age, wear, and modifications to the R-68 unit in question, and the Krause brochure showing that the R-68 was designed to include a chain to secure the unit to a forklift, no reasonable fact-finder could infer that the R-68 in question was defective when it left the hands of the manufacturer. Additionally, because the Court previously granted Defendant's motion to preclude Plaintiff's supplemental expert report, which offered testimony on the failure to warn issue, the record is completely devoid of any testimony supporting Plaintiff's failure to warn claim. See supra note 4. Finally, because Plaintiff has failed to establish any theory of liability against Defendant, the loss of

consortium claim by Plaintiff Joann Moore must also necessarily fail. See Horvath v. Rimtec Corp., 102 F.Supp.2d 219, 236 (D.N.J.2000) ("[t]he right of the spouse to recover on a loss of consortium claim depends upon the existence of tortious conduct on the part of the defendants").

IV. **CONCLUSION**

For the reasons set forth above, Defendant's motions to exclude Mr. Eckstine's testimony and for summary judgment will be granted. Accordingly, this matter will be dismissed in its entirety. An appropriate Order shall issue on this date.

DATED: November 30, 2018

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE